UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT LUIZZI and JOSEPHINE LUIZZI,

                  Plaintiffs,

        - against -

PRO TRANSPORT, INC. and LUIS SANCHEZ,

                  Defendants,
-----------------------------------------------------------------X
LUIS SANCHEZ,

            Defendant/Third Party Plaintiff,

        - against -

STATE NATIONAL INSURANCE COMPANY,

               Third Party Defendant,
-----------------------------------------------------------------X
STATE NATIONAL INSURANCE COMPANY,

            Second Third Party Plaintiff,

        - against -

GREEN MOUNTAIN AGENCY, INC.,

            Second Third Party Defendant.
-----------------------------------------------------------------X

**MEMORANDUM
A N D    ORDER**

02 CV 5388 (CLP)


      This personal injury action was commenced on September 25, 2002, in New York

Supreme Court, Kings County, by plaintiffs Robert and Josephine Luizzi based on injuries

suffered by Robert Luizzi during a traffic accident that occurred on September 22, 2001,

between the car driven by Mr. Luizzi and a tractor trailer owned by Pro Transport, Inc. ("Pro

Transport") and driven by Luis Sanchez ("Sanchez").  By Notice of Removal, dated October 4,

2002, defendants removed the action to this Court. A framed issue hearing was held before the Court on January 17, 18, and 22, 2007, to determine whether the insurance policy that had been issued to defendant Pro Transport (the "Pro Transport Policy") by State National Insurance Company ("State National") had been effectively cancelled prior to the date of the accident at issue.[1] Based on the evidence presented during the hearing, the Court issued a Memorandum and Order, dated February 26, 2008, determining that due to an error made by Green Mountain Agency, Inc. ("Green Mountain"),[2] an insurance wholesaler and agent for State National,[3] the policy was not effectively cancelled in accordance with New Jersey law. (See 2/26/08 Order[4] at 2).

Presently pending before this Court are the cross motions for summary judgment filed on April 3, 2009 by State National and Green Mountain, which seek a determination as to whether Green Mountain's failure to properly cancel the Pro Transport Policy renders it liable to State National under theories of breach of contract and/or negligence.

Based on the submissions of the parties, and for the reasons set forth below, the Court Orders as follows: 1) with regard to State National's contract claim, Green Mountain's motion

[1]On June 3, 2005, defendant Sanchez filed a Third Party Complaint against State National, alleging that State National, as the insurer for Pro Transport, was responsible for any liability arising out of the underlying vehicle accident.

[2]On February 26, 2006, State National commenced a third party action against Green Mountain.

[3]As the Court explained in its Order, dated March 13, 2008, the Court has not made any findings with respect to agency status. The Court uses the word "agency" in this case solely to explain the alleged relationship between the parties.

[4]Citations to "2/26/08 Order" refer to this Court's Memorandum and Order, dated February 26, 2008.

for summary judgment is granted, and State National's motion for summary judgment is denied; and 2) with regard to State National's negligence claim, the parties' cross motions for summary judgment are denied.

## FACTUAL AND PROCEDURAL HISTORY

The factual and procedural history leading up to the instant set of motions is set forth in greater detail in the Court's Memorandum and Order, dated February 26, 2008, and incorporated herein. For purposes of this motion, only those facts pertinent to an understanding of the relationship between State National and Green Mountain will be addressed in detail.

On or about August 15, 1999, State National entered into a General Agency Agreement (the "State National Agreement") with Reliant American General Agency, Inc. ("Reliant General"). (State Nat'l 56.1 Stmnt[5] ¶ 1, Ex. M; see also Darmody Aff.[6] ¶ 11). Under the State National Agreement, Reliant General was appointed as State National's "managing general agent" for producing and handling the administration of insurance policies in certain states, including New Jersey. (State Nat'l 56.1 Stmnt ¶ 1, Ex. M at 4; see also Darmody Aff. ¶ 11). The State National Agreement authorized Reliant General to, among other things, perform all acts and duties under any issued policies that would otherwise have been performed by State National. (State Nat'l 56.1 Stmnt ¶ 1, Ex. M; see also Darmody Aff. ¶ 11). Article VII of the State National Agreement contains a hold harmless and indemnification provision under which

---

[5]Citations to "State Nat'l 56.1 Stmnt" refer to State National's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, filed on April 3, 2009.

[6]Citations to "Darmody Aff." refer to the Affirmation of Thomas G. Darmody, Esq., in Support of State National's Motion for Summary Judgment, filed on April 3, 2009.

Reliant General agreed to indemnify State National with respect to any liability stemming from any actions, suits, losses, claims or damages occurring as a result of its conduct. (State Nat'l 56.1 Stmnt ¶ 1, Ex. M at 12).

Thereafter, on or about January 27, 2000, Reliant American Insurance Co. ("Reliant"), a subsidiary of Reliant General, entered into a General Agency Agreement with Green Mountain (the "Green Mountain Agreement"), in which Green Mountain agreed to solicit, receive and transmit proposals for policies and enter into policies on behalf of Reliant, undertaking to collect premiums and perform all customary services, "subject to the requirements imposed by law, the terms of this Agreement, and the underwriting rules and regulations of the company." (State Nat'l 56.1 Stmnt ¶¶ 2-3, Ex. N at 1; see also Darmody Aff. ¶ 12). The Green Mountain Agreement contains an indemnification clause, whereby Green Mountain agreed to indemnify Reliant with respect to any liability stemming from any actions taken by Green Mountain that result in litigation. (State Nat'l 56.1 Stmnt, Ex. N at 6-7).

On March 13, 2001, based on an application for insurance received from Garden State Brokers, Green Mountain provided a quote for commercial automobile insurance coverage to Pro Transport and issued a State National insurance policy to Pro Transport. (Id., ¶ 5, Ex. P). On March 29, 2001, Green Mountain issued a cancellation notice to Pro Transport (the "Notice of Cancellation") based on Pro Transport's failure to pay premiums, and mailed a copy of the Notice of Cancellation addressed to "State National Insurance Co. c/o Reliant American." (Id., Ex. S).

The accident giving rise to this litigation occurred on September 22, 2001, at the

intersection of Van Dam Street and Queens Boulevard, in Queens, New York, when a tractor trailer driven by defendant Sanchez, and allegedly owned by defendant Pro Transport, came into contact with a car driven by plaintiff Robert Luizzi. (Luizzi Compl.[7] ¶¶ 7-10). Thereafter, plaintiffs Robert and Josephine Luizzi commenced this action against defendants Sanchez and Pro Transport, seeking damages for Mr. Luizzi's personal injuries and Mrs. Luizzi's loss of services as a result of the alleged "negligence and carelessness" of defendants Sanchez and Pro Transport. (Id. ¶¶ 8-9).

On October 17, 2002, defendant Sanchez filed an Answer and asserted a cross claim, seeking contribution and indemnification from his co-defendant Pro Transport,[8] and on June 3, 2005, Sanchez filed a Third Party Complaint against State National, seeking indemnification pursuant to the commercial trucking insurance policy issued to Pro Transport by State National. (See Sanchez Compl.[9] ¶¶ 29-37).

On or about January 30, 2006, while this action was pending, Reliant was placed in receivership pursuant to an order issued by the District Court of Travis County, Texas, which

---

[7] Citations to "Luizzi Compl." refer to the Complaint by Robert and Josephine Luizzi, filed in this Court on October 4, 2002.

[8] As described in greater detail in the Court's Memorandum and Order, dated February 26, 2008, Pro Transport initially defaulted in the action and was subsequently permitted to file an Answer, in which it was asserted that Pro Transport did not own, operate, control, or lease either the tractor or the trailer involved in the accident, and, to the extent negligence was shown, any damages were due to the negligence of Sanchez. (Pro Transport Ans. ¶¶ 19, 20, filed on December 22, 2004).

[9] Citations to "Sanchez Compl." refer to the Third Party Complaint filed by defendant Luis Sanchez on June 3, 2005. The Third Party Complaint also named One Beacon Insurance Company, d/b/a General Accident Insurance Company ("One Beacon"), as a defendant. One Beacon, however, was dismissed from the suit on February 8, 2006.

appointed a rehabilitator.  (See Darmody Aff. in Opp.[10] ¶ 5, Ex. A).

Following the framed issue hearing held before this Court on January 17, 18, and 22, 2007, and the determination that the commercial trucking insurance policy issued to Pro Transport had not been cancelled in accordance with New Jersey insurance law prior to the Luizzi accident, State National filed a motion for summary judgment on April 3, 2009, seeking a judgment against Green Mountain, contending that:  1) based on Green Mountain's failure to properly cancel the Pro Transport Policy, Green Mountain, as administrator of the policy, is liable to State National under New Jersey law, based on a theory of negligence; and 2) Green Mountain is liable to State National for breach of contract based on the theory that State National is a third party beneficiary to the contract between Green Mountain and Reliant.

Green Mountain also filed a motion on April 3, 2009, seeking summary judgment in its favor, arguing that:  1) Texas law should apply and that under Texas law, State National may not proceed on a theory of negligence, but may only recover for breach of contract; and 2) State National may not pursue a claim for breach of contract because it is not in privity with Green Mountain.

---

[10]Citations to "Darmody Aff. in Opp." refer to the Affirmation of Thomas G. Darmody, Esq., in Opposition to Green Mountain's Motion for Summary Judgment, filed May 18, 2009.

DISCUSSION

I.    <u>Legal Standards</u>

    A.  <u>Summary Judgment</u>

It is well-settled that a party moving for summary judgment has the burden of establishing that there is no genuine issue of material fact in dispute such that it is entitled to judgment as a matter of law.  <u>See</u> Fed. R. Civ. P. 56(c); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 256 (1986); <u>Thompson v. Gjivoje</u>, 896 F.2d 716, 720 (2d Cir. 1990).  Since summary judgment is an extreme remedy, cutting off the rights of the non-moving party to present a case to the jury, <u>see</u> <u>Jute v. Hamilton Sundstrand Corp.</u>, 420 F.3d 166, 172 (2d Cir. 2005); <u>Gibralter v. City of New York</u>, 612 F. Supp. 125, 133-34 (E.D.N.Y. 1985) (stating that summary judgment "is a drastic remedy and should be applied sparingly"), the Court should only grant summary judgment "on the basis that no genuine issue remains for trial because it is quite clear what the truth is."  <u>In re Dana Corp.</u>, 574 F.3d 129, 151 (2d Cir. 2009) (internal quotation marks and citations omitted).  In addition, "'the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion.'"  <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986) (quoting <u>United States v. Diebold, Inc.</u>, 369 U.S. 654, 655 (1962)); <u>see also</u> <u>Terry v. Ashcroft</u>, 336 F.3d 128, 137 (2d Cir. 2003) (stating that "[i]n determining whether there are genuine issues of material fact, we are 'required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought'") (quoting <u>Stern v. Trustees of Columbia Univ. in City of New York</u>, 131 F.3d 305, 312 (2d Cir. 1997)).

7

Once the moving party discharges its burden of proof under Rule 56(c) of the Federal Rules of Civil Procedure, the party opposing summary judgment "must set forth specific facts indicating a genuine issue for trial exists in order to avoid the granting of summary judgment." Cifarelli v. Village of Babylon, 93 F.3d 47, 51 (2d Cir. 1996). Rule 56(e) "provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading." Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. Indeed, "the mere existence of *some* alleged factual dispute between the parties," without more, will not defeat a properly supported motion for summary judgment. Id. at 247-48 (emphasis in original). Enough evidence must favor the non-moving party's case such that a reasonable jury could return a verdict in its favor. Id. (internal citation omitted).

B. Choice of Law

As an initial matter, the parties in this case dispute which state's law should be applied in analyzing State National's claims against Green Mountain. State National contends that its claims are governed by New Jersey law, while Green Mountain contends that Texas law governs. In cases based on diversity jurisdiction, see 28 U.S.C. § 1332, the choice of law rules of the forum state determine which state's substantive law governs the claims in the action. See Fieger v. Pitney Bowes Credit Corp., 251 F.3d 386, 393 (2d Cir. 2001) (citing Klaxon v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)); Machleder v. Diaz, 801 F.2d 46, 51 (2d Cir. 1986), cert. denied, 479 U.S. 1088 (1987); see also Protostorm, LLC v. Antonelli, Terry, Stout & Kraus, LLP, No. 08 CV 931, 2010 WL 785316, at *4 (E.D.N.Y. Mar. 8, 2010). In this case, New York is the forum state, as the case was properly removed to the Eastern District of

New York, and thus the appropriate substantive law to apply will be determined in accordance with New York's choice of law rules.

Under New York law, a court must first determine whether a contract between the parties contains an enforceable choice of law provision. As a general matter, New York courts will enforce such a provision so long as the chosen law has a "reasonable relationship" to the contract and does not violate New York public policy. See, e.g., Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d 51, 55 (2d Cir. 1991) (noting, however, that the court may disregard the parties' choice of law provision if "the most significant contacts" are in a different state); LaGuardia Assocs. v. Holiday Hosp. Franchising, Inc., 92 F. Supp. 2d 119, 127 (E.D.N.Y. 2000); Rosenberg v. Pillsbury Co., 718 F. Supp. 1146, 1150 (S.D.N.Y. 1989); Finucane v. Interior Const. Corp., 264 A.D.2d 618, 620, 695 N.Y.S.2d 322, 325 (1st Dep't 1999).

Absent an enforceable choice of law provision, New York courts require that an actual conflict of law exists before engaging in a choice of law analysis. See Fieger v. Pitney Bowes Credit Corp., 251 F.3d at 393 (stating: "It is only when it can be said that there is no actual conflict that New York will dispense with a choice of law analysis") (citation and internal quotations omitted); see also K.T. v. Dash, 37 A.D.3d 107, 112, 827 N.Y.S.2d 112, 117 (1st Dep't 2006). In the event that no conflict exists, and "if New York law is among the relevant choices, New York courts are free to apply [New York law]." International Bus. Mach. Corp. v. Liberty Mut. Ins. Co., 363 F.3d 137, 143 (2d Cir. 2004).

Once an actual conflict is found, New York courts apply a variety of tests to determine the appropriate law to apply to each claim. With regard to contract claims, New York applies the law of the state with the "most significant contacts to the contract." Schwimmer v. Allstate Ins. Co., 176 F.3d 648, 650 (2d Cir. 1999) (citations omitted); see also GlobalNet Financial.com,

Inc. v. Frank Crystal & Co., Inc., 449 F.3d 377, 383 (2d Cir. 2006) (referring to this analysis as

the "center of gravity" test). As the Second Circuit has explained, this test considers a variety of

factors, including, "'the place of contracting, negotiation and performance; the location of the

subject matter of the contract; and the domicile of the contracting parties.'" GlobalNet

Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d at 384 (internal quotation omitted).

With regard to tort claims, New York courts apply an "[i]nterest analysis" approach.

See, e.g., Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d 189, 197-200, 491 N.Y.S.2d 90, 95-98,

480 N.E. 2d 679, 684-87 (1985). Interest analysis generally requires courts to apply "[t]he law

of the jurisdiction having the greatest interest in the litigation." Id. This requires consideration

of two questions: "1) what are the significant contacts and in which jurisdiction are they located;

and 2) whether the purpose of the law is to regulate conduct or allocate loss." K.T. v. Dash, 37

A.D.3d at 111, 827 N.Y.S.2d at 116; see also GlobalNet Financial.com, Inc. v. Frank Crystal &

Co., Inc., 449 F.3d at 384-85. In answering the second question, courts define loss allocation

laws as those that are "applicable once there is admittedly tortious conduct," and conduct

regulating laws as "those [that] people use as a guide to governing their primary conduct."

AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., No. 09 CV 5377, 2010 WL 2606042, at

*5 (S.D.N.Y. June 26, 2010) (internal citation and quotations omitted). As the Second Circuit

has explained:

> If conflicting conduct-regulating laws are at issue, the law of the jurisdiction
> where the tort occurred will generally apply because that jurisdiction has the
> greatest interest in regulating behavior within its borders. If the conflict involves
> allocation of losses, the site of the tort is less important, and the parties' domiciles
> are more important.

GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d at 384-85 (internal

quotations and citations omitted); see also Lindsay v. Toyota Motor Sales, U.S.A., Inc., 11 Misc.

10

3d 1077(A), 816 N.Y.S.2d 697 (table; text available at 2006 WL 940645, at *6) (Sup. Ct. 2006) (stating that a negligence claim involves "a conduct regulating rule").

## 1) The Parties' Choice of Law Arguments

The choice of law issues associated with each of State National's claims are discussed in detail below. Since the parties, however, have not addressed the choice of law particular to *each* claim – instead, assuming that the same choice of law principles apply to both claims – the Court briefly summarizes the parties' positions here.

State National asserts that because this Court previously ruled that New Jersey law governs questions involving the cancellation of the insurance policy, then New Jersey law must also govern State National's causes of action against Green Mountain under theories of negligence or as a third party beneficiary of Green Mountain's contract with Reliant. (State Nat'l Mem.[11] at 2-3). Green Mountain rejects this argument, contending that the issue currently before the Court does not involve the parties to the Pro Transport Policy. (Gr. Mtn Mem. in Opp.[12] at 8-9). Green Mountain notes that it is not a party to the Policy and that the claims against Green Mountain are unrelated to the rights of the policyholder, Pro Transport. (Id.) Therefore, Green Mountain argues that New Jersey law should not be applied to its dispute with State National.

Instead, Green Mountain contends that Texas law applies because State National's claims

---

[11]Citations to "State Nat'l Mem." refer to State National's Memorandum of Law in Support of its Motion of Summary Judgment, filed on April 3, 2009.

[12]Citations to "Gr. Mtn Mem. in Opp." refer to the Memorandum of Law of Second Third Party Defendant Green Mountain Agency, Inc. in Opposition to State National's Motion for Summary Judgment, filed May 18, 2009.

against Green Mountain flow from or are based on the August 15, 1999 agreement between State

National and Reliant, and the January 27, 2000 agreement between Green Mountain and Reliant

and Reliant General. (Id. at 2 (citing Gr. Mtn App. in Opp.,[13] Exs. C, E)). Both agreements

contain Texas choice of law provisions: 1) the State National Agreement states that it shall be

interpreted in accordance with applicable Texas law and regulations (State Nat'l 56.1 Stmnt, Ex.

M at 14-15); and 2) the Green Mountain Agreement also provides that the agreement "shall be

construed in accordance with the laws of Texas." (Id., Ex. N at 10). Additionally, Green

Mountain contends that since Reliant and State National are Texas companies, and State

National has argued that Green Mountain knew that it was performing in accordance with

Reliant's agreement with State National, Texas law should apply. (Gr. Mtn Mem. in Opp. at 2-3,

8-10).

     Notwithstanding the contractual choice of law provisions, Green Mountain further

argues that Texas law should apply because Texas is the state with the most significant contacts

to the agreements at issue. Specifically, Green Mountain argues that under New York's choice

of law analysis, the place of negotiation, contracting and performance, as well as the subject of

the agreements, coupled with the domicile of both contracting parties, make Texas the state with

the most significant contacts. (Id. at 9 (citing In re Allstate Ins. Co., 81 N.Y.2d 219, 226, 597

N.Y.S.2d 906, 908 (1993))).


        2) <u>The Court's Prior Ruling Does Not Control Choice of Law</u>

     At the outset the Court notes that, while the Court's earlier Memorandum and Order,

---

[13]Citations to "Gr. Mtn App. in Opp." refer to the Appendix of Exhibits attached to the
Affidavit of Thomas Palumbo in Opposition to State National's Motion for Summary Judgment,
filed on May 18, 2009.

dated February 26, 2008, determined that New Jersey law governed when considering the standards for cancellation of the Pro Transport Policy (see 2/26/08 Order at 2), the Court did not address the choice of law issues raised by the instant motions. Since there are potentially different policy considerations raised by the instant motions, the Court's earlier choice of law does not control, and the Court now analyzes State National's contract and negligence claims to determine whether New Jersey or Texas law should apply.

II.    Analysis

    A.  State National's Contract Claim

State National seeks indemnification from Green Mountain based on the theory that it is a third party beneficiary to the agreement between Reliant and Green Mountain.  (See State Nat'l Mem. at 6-8).

      1)  Texas Law Governs

New York courts enforce contractual choice of law provisions unless the chosen law violates New York public policy.  See, e.g., Cargill, Inc. v. Charles Kowsky Res., Inc., 949 F.2d at 55.  In this case, the Green Mountain Agreement with Reliant contains a Texas choice of law provision.  (See State Nat'l 56.1 Stmnt at 10).  Since neither party suggests that this choice of law provision violates New York public policy or that the provision is otherwise unenforceable as a matter of law,[14] State National's third party beneficiary claim is governed by Texas law.

_____

[14]The party opposing enforcement of a choice of law provision on public policy grounds must show more than that the laws of the other state are different from New York's laws; instead, there must be a showing that the foreign law violates a "fundamental principle of justice, some prevalent conception of good morals or some deep-rooted tradition of the common weal." Cooney v. Osgood Mach., Inc., 81 N.Y.2d 66, 78, 595 N.Y.S.2d 919, 926, 612 N.E.2d 277, 284

<u>See, e.g.</u>, <u>Prescient Acquisition Group v. MJ Pub. Trust</u>, No. 05 CV 6298, 2006 WL 2136293, at

*9 (S.D.N.Y. July 31, 2006) (stating: "Because the contract upon which [the party] claims to

have rights as a third party beneficiary contains a choice of law provision providing that New

York law will apply irrespective of the principles of conflict of laws, this claim is governed by

New York law").

Accordingly, the Court holds that Texas law governs State National's contract claim

against Green Mountain.


        2)  <u>Legal Standard – Texas Law</u>

Having determined that Texas law governs State National's contract claim, the Court

looks to the substantive law of Texas to determine whether to grant summary judgment on this

claim.

Under Texas law, the general rule is that only parties to a contract may bring an action

for breach of that contract.  <u>See, e.g.</u>, <u>Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd.</u>,

848 S.W.2d 724, 730 (Tex. App. 1992).  In "an action to recover damages flowing from the

breach of a written agreement it is ordinarily a necessary prerequisite that there be privity

between the party damaged and the party sought to be held liable."  <u>Republic Nat'l Bank v. Nat'l</u>

<u>Bankers Life Ins. Co.</u>, 427 S.W.2d 76, 79-80 (Tex. Civ. App. 1968).  Texas law, however,

recognizes that "a third party may recover on a contract made between other parties if the

contract was intended to secure a benefit to the third party, and the contracting parties entered

into the contract for the third party's benefit."  <u>Huntington Operating Corp. v. Sybonney Exp.</u>,

<u>Inc.</u>, No. H 08 781, 2009 WL 2423811, at *1 (S.D. Tex. Aug. 3, 2009) (citing <u>Stine v. Stewart</u>,

_____

(1993) (internal citation and quotations omitted).

80 S.W.3d 589, 589 (2002)).

Generally, the Texas courts have recognized three categories of beneficiaries of a contract: 1) donee beneficiaries, who receive a benefit as a "pure donation" if the contract is performed as promised; 2) creditor beneficiaries, who are owed a legal duty by the promisee and who receive a benefit when the performance of the contract is complete, see Stine v. Stewart, 80 S.W.3d at 589; and 3) incidental beneficiaries, who have no right against either the promisor or promisee and who will only benefit incidentally by the performance of the contract. See Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co., 427 S.W.2d 76, 79-80; see also Temple EasTex, Inc. v. Old Orchard Creek Partners, Ltd., 848 S.W.2d at 730. As the Fifth Circuit has explained, a non-party seeking to enforce contractual benefits under Texas law must establish "both that 1) the contracting parties intended to confer some benefit to the third party, and 2) the contracting parties entered into the contract directly for the third party's benefit." El Paso Refinery, LP v. TRMI Holdings, Inc., 302 F.3d 343, 354 (5th Cir. 2002) (citing MCI Telecomms. Corp. v. Texas Utils. Elec. Co., 995 S.W.2d 647, 651 (1999)).

In determining whether the parties to a contract intended to vest enforcement rights in a third party, Texas law presumes that the parties have contracted "for themselves and not for the benefit of a third party." Huntington Operating Corp. v. Sybonney Exp., Inc., 2009 WL 2423811, at *2; see also Missouri Pac. R.R. Co. v. Harbison-Fischer Mfg. Co., 26 F.3d 531, 540 (5th Cir. 1994) (noting that a third party seeking enforcement rights has a "heavy burden"); MJR Corp. v. B & B Vending Co., 760 S.W.2d 4, 11 (Tex. App. 1988) (holding that any doubts surrounding the status of a putative third party beneficiary should be resolved against the existence of third party enforcement rights). Consistent with this presumption, Texas courts limit their inquiry into the existence of third party beneficiary status to the "four corners of the

contract." Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co., 427 S.W.2d at 79-80; see also El

Paso Refinery, LP v. TRMI Holdings, Inc., 302 F.3d at 354 (holding that a third party was not a

third party beneficiary under Texas law because "the intent to benefit is not clear from the

language of the agreement"). This means that "any intent of the contracting parties to benefit a

third party is to be derived solely from the language of the contract." Talman Home Fed. Sav. &

Loan Ass'n of Ill. v. Am. Bankers Ins., 924 F.2d 1347, 1351 (5th Cir.), cert. denied, 502 U.S.

819 (1991); MJR Corp. v. B & B Vending Co., 760 S.W.2d at 11 (noting that the third party

"obligation must be clearly and fully spelled out or enforcement will be denied").


     3) Analysis

State National argues that it was the intended third party beneficiary of the agreement

between Reliant and Green Mountain, and that the appropriate test is whether the parties to the

contract intended State National to receive a benefit that might be enforced in the courts. Under

this standard, State National argues that the Court should consider the pertinent provisions of the

agreement to ascertain the parties' intent. (See State Nat'l Mem. at 7 (citing Broadway Maint.

Corp. v. Rutgers State Univ., 90 N.J. 253, 447 A.2d 906 (1982)).

In the absence of contractual privity between State National and Green Mountain, or an

express designation of State National as a third party beneficiary, Green Mountain contends that

State National may not recover because Texas law presumes that non-parties are not intended to

be third party beneficiaries. (See Gr. Mtn Mem. in Opp. at 15-17 (citing Thomson v. Espey

Huston & Assoc., Inc., 899 S.W.2d 415, 418 (Tex. App. 1995); Marine Creek Partners, Ltd. v.

Caldwell, 926 S.W.2d 793, 795 (1991)). Green Mountain argues that State National's claim as a

third party beneficiary fails because there is no language in the agreement between Green

Mountain and Reliant indicating that the parties intended to make State National a third party beneficiary, nor has State National presented any direct evidence to suggest that the parties contemplated or understood that State National would be a third party beneficiary to the agreement.  (See Gr. Mtn Mem. at 15-17).

Although the parties dispute the nature of the legal relationship between State National and Green Mountain, neither party appears to dispute the existence of, or the language contained in the agreement between Reliant and Green Mountain.  (See, e.g., Gr. Mtn 56.1 Resp.[15] ¶ 2).  In accordance with the presumption in Texas law that Reliant and Green Mountain contracted "for themselves and not for the benefit of a third party," Huntington Operating Corp. v. Sybonney Exp. Inc., 2009 WL 2423811, at *2, the Court has examined the "four corners of the contract" to determine whether Reliant and Green Mountain intended to vest rights in State National.  See Republic Nat'l Bank v. Nat'l Bankers Life Ins. Co., 427 S.W.2d at 80.  This examination did not reveal anything in the agreement that suggests any intent on the part of either party to vest contractual rights in State National.  See Missouri Pacific R. Co. v. Harbinson-Fischer Mfg. Co., 26 F.3d at 540.  Although State National points to extrinsic evidence purporting to show an intent to benefit State National (see, e.g., State Nat'l Mem. at 7-8), Texas law is clear that "any intent of the contracting parties to benefit a third party is to be derived solely from the language of the contract."  Talman Home Fed. Sav. & Loan Ass'n of Ill. v. Am. Bankers Ins., 924 F.2d  at 1351.

In the absence of any reference to State National in the contract – or, for that matter, any reference to any third party for whose benefit the contract was made – the Court finds that State

---

[15]Citations to "Gr. Mtn 56.1 Resp." refers to Green Mountain's Response to State National's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, filed on May 18, 2009.

National is, at best, an incidental beneficiary of the Green Mountain Agreement and, as such, Texas law requires that "enforcement [of the contract] be denied" as to the third party. See MJR Corp. v. B & B Vending Co., 760 S.W.2d at 12. As Green Mountain argues, permitting State National to proceed with its breach of contract claim under the circumstances is an invitation "that this Court write a better contract than [State National] did for itself[,] in an endeavor to implicate Green Mountain." (Gr. Mtn Mem. at 12).

Since there is no mention of State National in the Green Mountain Agreement, much less any expressed intent to make State National a third party beneficiary of the agreement, the Court finds that there are no genuine issues of material fact in dispute as to this claim. Texas law limits this Court's inquiry to the four corners of the agreement to determine whether State National has rights as a third party, see, e.g., In re El Paso Refinery, LP, 302 F.3d at 354, and therefore summary judgment is proper under these circumstances because, as a matter of Texas law, State National was not an intended third party beneficiary to the Green Mountain Agreement. See Fed. R. Civ. P. 56(c).

Accordingly, the Court grants Green Mountain's motion for summary judgment on State National's contract claim.


B. State National's Tort Claim

State National has raised a separate claim, sounding in tort, upon which it seeks recovery from Green Mountain. (State Nat'l Mem. at 2-6). State National claims that due to Green Mountain's negligence in its failure to properly cancel the Pro Transport Policy, State National remains responsible on the Policy and may be liable for any damages owed to plaintiffs. (Id.) Green Mountain counters that: 1) under Texas law, a party cannot be held liable for the

negligent performance of a contract where the injury caused to the third party is purely economic; and 2) under New Jersey law, Green Mountain owed no duty to State National because it was not reasonably foreseeable that State National would be injured by Green Mountain's alleged negligence in failing to cancel the Pro Transport Policy.  (See Gr. Mtn Mem. at 13-16).

       1)  <u>New Jersey Law Governs</u>

Although Texas law governs any claims arising out of the contractual agreements at issue, the Court must still determine the appropriate law to apply to State National's tort claim. <u>See</u> <u>Blue Ridge Farms, Inc. v. Crown Equip. Corp.</u>, No. 01 CV 8460, 2005 WL 755756, at *9 (E.D.N.Y. Mar. 28, 2005) (noting that the Court must "determine the applicable law for each claim"); <u>see also</u> <u>Fieger v. Pitney Bowes Credit Corp.</u>, 251 F.3d at 397 n.1 (noting that there is no conflict in applying one state's law to one claim and another state's law to a different claim; "'the rules of one legal system are applied to regulate certain issues arising from a given transaction or occurrence, while those of another system regulate other issues'") (quoting <u>Hutner v. Greene</u>, 734 F.2d 896, 901 (2d Cir. 1984)).

As a preliminary matter, the Court finds that the contractual choice of law provisions in the State National Agreement and the Green Mountain Agreement do not control the choice of law with respect to the tort claim between State National and Green Mountain.  These contractual provisions relate only to the interpretation of the contractual language and do not purport to govern non-contract claims that might arise during the course of the contractual relationship.  (See State Nat'l 56.1 Stmnt, Exs. M at 14-15, N at 10).  Specifically, the State National Agreement provides that "[t]his <u>Agreement</u> . . . shall be governed by and construed in

accordance with the laws of the State of Texas," and that "[t]his Agreement shall be interpreted

in conformance with applicable Texas law and regulation." (Id., Ex. M at 14-15 (emphasis

added)). The Green Mountain Agreement similarly provides that "[t]his Agreement shall be

interpreted in accordance with the laws of the State of Texas." (Id., Ex. N at 10 (emphasis

added)). The plain language of these choice of law provisions makes it clear that their scope is

limited to issues of interpretation of the contractual language.

    As a result, even if the contractual choice of law provisions were binding on State

National and Green Mountain – two entities not in privity with one another – the Court finds that

the instant tort claim is outside the scope of the provisions. See, e.g., Krock v. Lipsay, 97 F.3d

640, 645 (2d Cir. 1996) (holding that a provision in the parties' mortgage contract that stated,

"[t]his Mortgage shall be governed by and construed in accordance with the laws of the

Commonwealth of Massachusetts," cannot "be read broadly enough to apply to fraudulent

misrepresentation"); Icebox-Scoops v. Finanz St. Honore, B.V., No. 07 CV 0544, 2009 WL

3838276, at *6 (E.D.N.Y Nov. 16, 2009) (holding that a contractual choice of law provision is

inapplicable to tort claims because such claims are "outside the scope of the choice-of-law

clause, which refers only to the contract"); Plymack v. Copley Pharm., Inc., No. 93 CV 2655,

1995 WL 606272, at *5 (S.D.N.Y. Oct. 12, 1995) (stating: "A contractual choice-of-law

provision, however, does not bind the parties with respect to non-contractual causes of action").

    Proceeding to the next step in New York's conflict of law analysis, the Court must

determine if an actual conflict exists between the laws of Texas and New Jersey with respect to

State National's tort claim.

    Under New Jersey law, a third party who is within the "zone of hazard" created by the

activity of contracting parties may bring a claim against one of the parties based on the negligent

performance of the contract obligations. <u>See, e.g.</u>, <u>Repola v. Morbark, Indus., Inc.</u>, 934 F.2d 483, 486 n.3 (3d Cir. 1991) (citing Restatement (Second) of Torts § 324A)). Courts determine the scope of the "zone of hazard" by considering both foreseeability and fairness. <u>See</u> <u>Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc.</u>, 135 N.J. 182, 195, 638 A.2d 1285, 1294 (1994) (holding insurance broker liable to client on negligence theory when insurance company with which broker had placed the policy became insolvent). Moreover, lack of privity under New Jersey law does not prevent an independent contractor from being held liable for negligence. <u>Id.</u> at 196, 638 A.2d at 1294-95.

In contrast to New Jersey law, a third party under Texas law cannot state a claim for the negligent performance of a contract, where the only injury to the third party was economic in nature. <u>See, e.g.</u>, <u>Sterling Chem., Inc. v. Texaco, Inc.</u>, 259 S.W.3d 793, 796 (Tex. App. 2007) (stating: "[I]f a plaintiff only seeks to recover for the loss or damage to the subject matter of a contract, he cannot maintain a tort action against a defendant"). Even where the parties are not in contractual privity, courts applying Texas law have held that there is no duty in tort where the only injury claimed is for damages recoverable under a claim for breach of contract. <u>Id.</u> at 797; <u>see also</u> <u>Hininger v. Case Corp.</u>, 23 F.3d 124, 126-27 (5th Cir. 1994), <u>cert. denied</u>, 513 U.S. 1079 (1995). In <u>Coastal Conduit & Ditching, Inc. v. Noram Energy Corp.</u>, the court specifically declined to follow the New Jersey rule that any foreseeable plaintiff may recover for pure economic loss. <u>See</u> 29 S.W.3d 282, 285-90 (Tex. App. 2000).

Thus, an actual conflict exists between the laws of Texas and New Jersey on the viability of State National's tort claim, requiring the Court to engage in "[i]nterest analysis" to determine whether, as State National contends, New Jersey law governs this claim, or, as Green Mountain

contends, Texas law governs.[16]  See Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d at 197, 491 N.Y.S.2d at 95, 480 N.E.2d at 684.

The parties do not appear to dispute, as Green Mountain contends, that Texas is the place of negotiation, contracting, and performance of the insurance agreement, and that the subject of the agreement, and the domicile of both contracting parties, is Texas.  (See Palumbo Aff.[17] ¶ 9-10; Gr. Mtn Mem.[18] at 10-11).  Green Mountain's argument, however, focuses only on the factors more relevant to the choice of law analysis for a contract claim, cf. Schwimmer v. Allstate Ins. Co., 176 F.3d at 650, and fails to consider, "because of its relationship or contact with the occurrence or the parties, [which state] has the greatest concern with the specific issue raised in the litigation."  K.T. v. Dash, 37 A.D.3d at 111, 827 N.Y.S.2d at 116; see also Schultz v. Boy Scouts of Am., Inc., 65 N.Y.2d at 197, 491 N.Y.S.2d at 95, 480 N.E.2d at 684 (noting that New York courts apply an "[i]nterest analysis" test to tort claims).

In this case, the Court finds that New Jersey has the greatest interest in the litigation over Green Mountain's alleged negligence in cancelling the Pro Transport Policy.  Having considered the two relevant questions – namely, "1) what are the significant contacts and in which jurisdiction are they located; and 2) whether the purpose of the law is to regulate conduct or allocate loss" – the Court is satisfied that no state other than New Jersey has a significant interest

---

[16]As indicated above, New York courts will do away with the choice of law analysis and simply apply New York law in the absence of an actual conflict.  See Curley v. AMR Corp., 153 F.3d 5, 11-12 (2d Cir. 1988).  In this case, since the Court finds that New Jersey and Texas law are in conflict, the Court need not consider whether either New Jersey or Texas law is in conflict with New York law.

[17]Citations to "Palumbo Aff." refer to the Affidavit of Thomas Palumbo in Opposition to State National's Motion for Summary Judgment, filed on May 18, 2009.

[18]Citations to "Gr. Mtn Mem." refer to Green Mountain's Memorandum of Law in Support of its Motion for Summary Judgment, filed on April 3, 2009.

in the disposition of State's National's negligence claim. See K.T. v. Dash, 37 A.D.3d at 111, 827 N.Y.S.2d at 116.

Turning to the first question, the Court finds that the significant contacts relevant to State National's tort claim are located in New Jersey. See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d at 384-85. Although neither Reliant, Reliant General, State National nor Green Mountain appear to be domiciled in New Jersey (see Boyar Aff. in Opp.,[19] Exs. A, B; Gr. Mtn App.,[20] Ex. 5 at 1; Palumbo Aff. in Opp.[21] ¶ 8), and the underlying accident occurred in New York, Pro Transport, the party covered by the policy at issue, has its principal place of business in New Jersey (State Nat'l Sec. Third Party Compl.[22] ¶ 6); defendant Sanchez, the driver of the vehicle involved in the accident and who appears to have been covered by the Pro Transport Policy that Green Mountain purported to cancel, is a resident of New Jersey (Sanchez Compl. ¶ 1); and the parties do not dispute that both Green Mountain and State National transact business in New Jersey. (Id. ¶ 12; Gr. Mt. Sec. Third Party Ans.[23] ¶ 12). The only contacts that Texas has to this case are those contacts that are relevant to the negotiation and contract formation of the agreements between the insurance carriers.

---

[19]Citations to "Boyar Aff. in Opp." refer to the Affirmation of David A. Boyar, Esq., in Opposition to State National's Motion for Summary Judgment, filed on May 18, 2009.

[20]Citations to "Gr. Mtn App." refer to the Appendix of Exhibits in Support of Green Mountain's Motion for Summary Judgment, filed on April 3, 2009.

[21]Citations to "Palumbo Aff. in Opp." refer to the Affidavit of Thomas Palumbo in Opposition to State National's Motion for Summary Judgment, filed on May 18, 2009.

[22]Citations to "State Nat'l Sec. Third Party Compl." refer to the Second Third Party Complaint, filed by State National on February 6, 2006.

[23]Citations to "Gr. Mtn Sec. Third Party Ans." refer to the Second Third Party Answer, filed by Green Mountain on August 8, 2006.

With regard to the second question, it is clear that the negligence law at issue is conduct regulating, as negligence law seeks to "regulate conduct giving rise to a cause of action." Cacciola v. Selco Balers, Inc., 127 F. Supp. 2d 175, 184 (E.D.N.Y. 2001); Islam v. Modern Tour, Inc., No. 00 CV 8713, 2004 WL 2210295, at *3 (S.D.N.Y. Sept. 30, 2004) (stating: "[t]he laws of negligence and strict product liability regulate conduct rather than allocate loss"); Lindsay v. Toyota Motor Sales, U.S.A., Inc., 2006 WL 940645, at *6. Although State National and Green Mountain dispute the allocation of liability should plaintiffs succeed on their underlying claims arising out of the vehicle accident, no such finding of liability has been made at this time. Instead, the first issue to be determined is whether Green Mountain's conduct renders it liable to State National. Thus, until a finding of negligence and liability has been made, it is clear that the law in question is conduct regulating. See AllGood Entm't, Inc. v. Dileo Entm't & Touring, Inc., 2010 WL 2606042, at *5 (holding that loss allocation rules are those that are "applicable once there is admittedly tortious conduct") (internal citation and quotations omitted).

As such, New York courts presume that "the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders." GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d at 384-85 (internal quotations and citation omitted). Under this formulation, Green Mountain's alleged negligence in mailing the Notice of Cancellation to the wrong address appears to have occurred in Vermont, the place from which the Notice of Cancellation was mailed. See, e.g., Colonial Penn. Ins. Co. v. Minkoff, 40 A.D. 2d 819, 820, 338 N.Y.S.2d 444, 446 (1st Dep't 1972) (stating: "The *lex loci contractus* is Pennsylvania, where the policy was mailed, so that law should govern"), aff'd, 33 N.Y.2d 542, 301 N.E.2d 424, 347 N.Y.S.2d 437 (1973).

However, since neither party has suggested that Vermont law should apply, the Court need not consider whether New York courts would apply Vermont law to the present claim. See, e.g., Lipin v. Hunt, 538 F. Supp. 2d 590, 599-600 (S.D.N.Y. 2008) (applying New York law, even though the causes of action occurred in Denmark, because the parties assumed that New York law governed); Henneberry v. Cumitomo Corp. of Am., No. 04 CV 2128, 2005 WL 991772, at *5 n.3 (S.D.N.Y. Apr. 27, 2005).

Even if the parties had argued that Vermont law applied, it is clear that New Jersey has the greatest interest in regulating the cancellation of the Pro Transport Policy. Nothing in the record suggests that Texas, Vermont, or any other state, has any greater interest than New Jersey in regulating the conduct of Green Mountain, a corporation doing business in New Jersey, and in ensuring that an insurance policy issued to a corporation domiciled in New Jersey is properly cancelled in accordance with New Jersey law. To the contrary, it is undisputed that the laws of New Jersey establish the procedures by which an insurance policy may be cancelled and it was these New Jersey laws that were allegedly violated when Green Mountain failed to properly cancel the policy.

Green Mountain's alleged negligence in cancelling the Pro Transport Policy stems from its failure to comply with the notice provisions of New Jersey Statute, Section 17:29C-10. Instead of properly addressing the Notice of Cancellation to Pro Transport at its New Jersey office, Green Mountain sent the Notice of Cancellation to an entity with a similar name, but at a completely different address in New Jersey. (See 2/26/08 Order at 16-17 (holding that Green Mountain's Notice of Cancellation was ineffective under New Jersey law)).

Thus, the Court finds that because New Jersey has the most significant interest in regulating those companies that issue insurance policies within its borders and according to its

laws, New Jersey has the greatest interest in the outcome of the litigation over State National's tort claim. See GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc., 449 F.3d at 385.

Accordingly, the Court holds that New Jersey law governs State National's tort claim against Green Mountain.


2) Legal Standard – New Jersey Law

Negligence liability under New Jersey law requires proof of four elements: 1) existence of a duty; 2) breach of that duty; 3) proximate cause; and 4) actual damages. See, e.g., Weinberg v. Dinger, 106 N.J. 469, 484, 524 A.2d 366, 373 (1987). New Jersey courts have imposed liability for injuries incurred by a third party as a result of the negligent performance of a contract even when the plaintiff lacked privity and was not a third party beneficiary to the contract. See Impex Agric. Commodities Div. Impex Overseas Corp. v. Parness Trucking Corp., 576 F. Supp. 587, 591 (D.N.J. 1983). In this case, the parties dispute whether Green Mountain had a duty to avoid economic injury to State National. See Carvalho v. Toll Bros. & Developers, 143 N.J. 565, 572, 675 A.2d 209, 212 (1996). Whether a party owes such a duty is a generally a question of law to be decided by the court. Id. (quoting Wang v. Allstate Ins. Co., 125 N.J. 2, 15, 592 A.2d 527, 534 (1991).

"The question of whether a duty to exercise reasonable care to avoid the risk of harm to another exists is one of fairness and policy that implicates many factors." Carvalho v. Toll Bros. & Developers, 143 N.J. at 572, 675 A.2d at 212. While the New Jersey courts initially consider the forseeability of injury in determining whether a party to a contract owes a duty to non-parties to avoid injury, see, e.g., J.H. Reid Gen. Contractor v. Conmaco/Rector, L.P., No. 08 6034, 2010 WL 398486, at *7 (D.N.J. Jan. 27, 2010); Carvalho v. Toll Bros. and Developers, 143 N.J. at

572-74, 675 A.2d at 212-15, the determination of foreseeability of harm and considerations of policy and fairness are connected.  See Carvalho v. Toll Bros. and Developers, 143 N.J. at 572-74, 675 A.2d at 212-15 (citing Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 261 N.J. Super. 245, 249, 618 A.3d 870, 872 (N.J. Sup. Ct. 1993)) (holding that "the concept of foreseeability [subsumes] many of the concerns we acknowledge as relevant to the imposition of a duty: the relationship between the plaintiff and the tortfeasor, the nature of the risk, and the ability and opportunity to exercise care"), aff'd, 135 N.J. 182, 638 A.2d 1288 (1994)).

The foreseeability of harm in terms of the magnitude and likelihood of potential harm is subject to an objective analysis, while the determination of whether fairness and policy warrant the imposition of a duty is more of a value judgement.  Carvalho v. Toll Bros. and Developers, 143 N.J. at 572-74, 675 A.2d at 212-15; Weinberg v. Dinger, 106 N.J. at 485, 524 A.2d at 374-75.  As one court stated, "New Jersey law permits an individual who is not a party to a contract, but who is within the zone of hazard created by the contract's activity, to maintain a cause of action against a contracting party for negligent performance of its contractual responsibilities." Repola v. Morbark, Indus., Inc., 934 F.2d at 486 n.3; see also Impex Agric. Commodities Div. Impex Overseas Corp. v. Parness Trucking Corp., 576 F. Supp. 587, 591 (D.N.J. 1983); Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 261 N.J. Super. at 249, 618 A.3d at 872.

"Once foreseeability of an injured party is established, considerations of fairness and policy then govern whether the imposition of a duty is warranted."  J.H. Reid Gen. Contractor v. Conmaco/Rector, L.P., 2010 WL 398486, at *7 (internal citation and quotations omitted).  These considerations "involve[] identifying, weighing, and balancing several factors – the relationship of the parties, the nature of the attendant risk, the opportunity and ability to exercise care, and

the public interest in the proposed solution." Hopkins v. Fox & Lazo Realtors, 132 N.J. 426, 439, 625 A.2d 1110, 1116 (1993) (citation omitted).

In Impex Agricultural Commodities Division Impex Overseas Corporation v. Parness Trucking Corp., the court considered the scope of an insurance broker's liability to third parties who were strangers to the contract between the broker and the person engaging the broker's services. 576 F. Supp. at 589-91. The court held that the broker who failed to obtain an automobile insurance policy not only owed a duty to the insured to procure the requested insurance but also owed a duty to any third party injured by the insured; "such a third party [may] sue the broker for negligence in the procurement of the requested insurance." Id. at 591. The court relied in part on the "strong statutory policy to provide funds for wrongfully injured parties" and on the "peculiar significance of automobile liability policies where protection of the insured is not the primary object." Id. Cf. N.J. Rev. Stat. 2A:53A-25 (providing a cause of action by a third party against an accountant "for rendering any professional accounting service" under certain circumstances, including where the accountant was aware of the claimant's reliance on the accountant's services).

3) Analysis

In this case, the parties' dispute centers around the first element of negligence under New Jersey law – namely, whether Green Mountain owed a duty to State National. Although negligence liability also requires proof of breach, causation, and damages, the parties do not address these elements in their motion papers. See, e.g., Weinberg v. Dinger, 106 N.J. at 484, 524 A.2d at 373. It is undisputed that Green Mountain was under a contractual duty to Reliant to properly administer the Green Mountain Agreement. Green Mountain's alleged failure to cancel

28

the Pro Transport Policy in accordance with New Jersey law leaves Reliant responsible for any valid claims asserted under the Policy.  However, as explained above, for Green Mountain to have owed a duty to State National, State National must establish that it was "within the zone of hazard," such that it was reasonably foreseeable to Green Mountain that a breach of the Green Mountain Agreement would result in injury to State National.

State National argues that Green Mountain's actions in administering and failing to properly cancel the Pro Transport Policy stemmed from its contractual obligations to Reliant, and thus, based on considerations of foreseeability and fairness, Green Mountain should be held liable for its negligent performance of the contract.  (See State Nat'l Mem. at 4-6 (citing, inter alia, Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. at 204, 638 A.2d at 1299 (holding insurance broker liable on a negligence theory to client when insurance company with which broker had placed the policy became insolvent))).  In support of its argument, State National contends that "[t]here can be no more foreseeable party to be potentially damaged by Green Mountain's actions here than State National."  (State Nat'l Mem. at 4).

According to State National, it was clear to Green Mountain that State National was underwriting the Pro Transport Policy.  (See, e.g., State Nat'l Interrog. Resp.[24] ¶ 1).  Among other things, State National points out that the Declaration page of the Pro Transport Policy listed State National as the insurance company; that all correspondence was directed to State National; and that State National's underwriting manuals were used by Green Mountain in

---

[24]Citations to "State Nat'l Interrog. Resp." refer to State National's Responses to Second Third Party Defendants' First Set of Interrogatories, dated November 25, 2008, and attached as Exhibit J to State National's Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment, filed on April 3, 2009.

administering the Policy. (See Bauman Aff.[25] ¶¶ 1-8; Darmody Aff. ¶¶ 10-17). Based on the record provided to the Court, State National contends that since this Court has already determined that the Pro Transport Policy was not cancelled by Green Mountain, summary judgment should be granted in State National's favor on the claim of negligence and Green Mountain should be required to pay any damages incurred by State National. (State Nat'l Mem. at 2-6).

Green Mountain readily concedes that it was "aware that the Pro Transport [P]olicy was issued on State National paper" and that State National had a relationship with Reliant. (Gr. Mtn Mem. in Opp. at 4). Green Mountain, however, has also provided evidence raising a genuine issue of material fact as to whether it believed that Reliant had a so-called "fronting arrangement" with State National,[26] whereby Reliant was actually underwriting the Pro Transport Policy, while using State National as a front to gain access to New Jersey, a state in which Reliant was not authorized to sell insurance.

Green Mountain's evidence includes a number of documents listing Reliant as the underwriter and noting that Reliant, not State National, would be responsible for setting reserves and resolving and paying claims under the policies issued by Green Mountain. (See, e.g., Gr. Mtn App., Exs. 6-7). The Reliant Mission Statement, for instance, describes Reliant as in the

---

[25]Citations to "Bauman Aff." refer to the Affidavit of Donald J. Bauman in Support of State National's Motion for Summary Judgment, filed on April 3, 2009, and attached to State National's Motion for Summary Judgment as Exhibit L.

[26]As the Seventh Circuit explained: "In a fronting arrangement . . . policies are issued by a state-licensed insurance company and then immediately reinsured to 100 percent of their face value by the out-of-state, unlicensed insurer." Reliance Ins. Co. v. Shriver, Inc., 224 F.3d 641, 643 (7th Cir. 2000); see also infra note 31 (discussing New Jersey insurance law).

"underwriting" business (id., Ex. 7 at GM 227-28[27] (further noting the company philosophy of

"Underwriting Profit")), and states that Reliant will "pay what we owe as quickly as possible."

(Id. at GM 238).  The Mission Statement also characterizes Reliant as an "integrated property

and casualty insurance and financial service firm [that] specializ[es] in the marketing,

underwriting and providing insurance services within our area of expertise . . . ."  (Gr. Mtn App.

in Opp., Ex. 7 at GM 227, 238-40).

Although the Pro Transport Policy indicates that coverage is provided by State National

(Gr. Mtn Mem. in Opp. at 4-5), the Policy also lists Reliant's Fort Worth, Texas headquarters as

the Administrative Office.  (See State Nat'l 56.1 Stmnt, Ex. R; Gr. Mtn Mem. at 5).  Nowhere

does the Policy even provide contact information for State National.  (See State Nat'l 56.1

Stmnt, Ex. R; Gr. Mtn Mem. at 5).  Additionally, the Notice of Cancellation listed both State

National and Reliant as the insurance companies.  (See Palumbo Aff. in Opp., Ex. E).  Similarly,

the copy of the Notice of Cancellation that Green Mountain sent was addressed to "State

National Insurance Co. c/o Reliant American," with the address being that of Reliant.  (State

Nat'l 56.1 Stmnt, Ex. S).  Although State National's name did appear on these documents, which

tends to show that it was underwriting the Policy (State Nat'l Rep.[28] at 3), Green Mountain has

offered evidence raising a genuine issue of material fact as to whether the appearance of State

National's name was merely part of a "fronting arrangement."[29]  (See Gr. Mtn 56.1 Resp. ¶ 6;

---

[27]Citations to "GM [#]" refer to the Bates Stamp Number in the bottom right corner of the document.

[28]Citations to "State Nat'l Rep." refer to State National's Reply in Support of its Motion for Summary Judgment, filed on June 8, 2009.

[29]The parties appear to dispute whether Green Mountain had the authority to cancel the Pro Transport Policy without approval from Reliant and/or State National.  (See Palumbo Aff. in Opp. at 3-4; State Nat'l Rep. at 3).  Although the Court has considered the parties' arguments on

Gr. Mtn  Mem. in Opp. at 8-10).

Additionally, the minutes of the September 13, 2000 Reliant Agents Advisory Council Meeting report numerous references by Reliant to its role as an underwriter, including a record that Reliant is "currently pursuing a nationwide fronting agreement" with another carrier. (Palumbo Aff. in Opp., Ex. B at GM 347; see also Gr. Mtn Mem. in Opp. at 5-6).  Beyond these minutes, Green Mountain also offered various Underwriting Bulletins, issued in Reliant's name that indicate changes to "our" underwriting guidelines.  (See, e.g., Palumbo Aff. in Opp., Ex. A). Although Reliant stated in its underwriting manual that coverage is "written through" State National, Green Mountain's understanding of the import of this phrase is unclear, especially when read in conjunction with Reliant's later statement that:  "This manual outlines our commercial auto underwriting requirements, coverage available, forms and endorsements and pricing."  (Gr. Mtn App., Ex. 10 (emphasis added)).

According to Green Mountain, Reliant eventually replaced State National with Lincoln General Insurance Company as the fronting carrier and sent materials to its agents that were identical to the materials sent by Reliant when State National served as the fronting carrier.  (See Palumbo Aff. in Opp., Exs. C, D).  In fact, during a January 17, 2002 telephone conference announcing Reliant's replacement of its fronting carrier, in which Reliant, Green Mountain, and others participated, a representative of Reliant made the following statement:  "One thing to remember, I know Lincoln General is big up in the East Coast.  This is a Reliant American Independent filed and state approved program *using Lincoln General as a front company*.  So this is a Reliant American program not a Lincoln General Program . . . . Underwriting

_____

this point, neither party has attempted to explain the relevance of this authority to the issues in this case.  Nor is it clear how the question of authority assists in resolving the current cross motions.

Philosophy has not changed." (Gr. Mtn App., Ex. 14 (emphasis in original)).

Viewing the record as a whole, and drawing all inferences in favor of the party against whom summary judgment is sought, the Court finds that summary judgment is not appropriate in favor of either party on State National's tort claim.[30] See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986); Gibralter v. City of New York, 612 F. Supp. at 133-34 (stating that summary judgment "is a drastic remedy and should be applied sparingly"). Given the conflicting evidence contained in the record, the Court finds that a genuine issue of material fact exists as to whether Green Mountain knew, or should have known, that State National, not Reliant, was underwriting the Pro Transport Policy. See Carter Lincoln-

---

[30]The Court has considered Green Mountain's argument that the sworn statements of State National's attorney, Thomas G. Darmody, Esq., and that of Donald J. Bauman, a third party adjustor, both of which set forth facts leading up to the present motions and also supply a number of documents that were exchanged during discovery, are not competent because neither individual has "personal knowledge of Green Mountain's knowledge or understanding." (Gr. Mtn Mem. in Opp. at 2). It appears from a review of the record that the statements at issue contain factual assertions supported by citations to supporting documents, as well as information about the procedural history of this case, of which counsel presumably has personal knowledge. Green Mountain's statement of the law is correct: as a general matter, the Court may only consider affidavits made upon personal knowledge. See, e.g., Fed. R. Civ. P. 56(e); H. Sand & Co., Inc. v. Airtemp Corp., 934 F.2d 450, 454-55 (2d Cir. 1991). However, even if the Darmody and Bauman statements are inadmissible, as Green Mountain contends, the Court finds that more than sufficient evidence exists in the record to raise a genuine issue of material fact as to Green Mountain's knowledge of State National's relationship to the Pro Transport Policy. Indeed, many of the documents supplied by Green Mountain itself bear both the names of Reliant and State National, which in and of itself might lead reasonable jurors to differ over Green Mountain's understanding of the relationship between the parties. (See, e.g., Gr. Mtn App., Exs. 8-10). Additionally, to the extent the sworn statements are inadmissible, the documents annexed thereto as exhibits may still be considered if the Court finds the documents to be authentic. See Haur v. New York City Health and Hosp. Corp., No. 07 CV 6175, 2010 WL 649284, at *3-4 (S.D.N.Y. Feb. 19, 2010). In this case, the Court, having considered all of the circumstances, including the appearance and substance of the relevant documents, and Green Mountain's failure to object to the authenticity of the documents, finds that there are issues of fact as to the meaning of the documents. As for questions of authenticity, the Court may properly consider the exhibits attached to the sworn statements in question for purposes of this motion, even if the Court were to find that the statements themselves were inadmissible. See id. at *3-4.

Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. at 194, 638 A.2d at 1294 (noting that foreseeability is a "critical" factor in determining the existence of a duty). That is, based on the evidence before the Court, reasonable jurors may disagree as to whether it was foreseeable to Green Mountain that its failure to properly cancel the Pro Transport Policy would result in economic injury to State National. See Anderson v. Liberty Lobby, Inc., 477 U.S. at 248. Although whether Green Mountain had a duty to State National is a question of law for the Court to decide, see Carvalho v. Toll Bros. and Developers, 143 N.J. at 572, 675 A.2d at 212, genuine issues of material fact remain outstanding that underlie such a determination. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. at 256; Thompson v. Gjivoje, 896 F.2d at 720.

As described in detail above, numerous documents make reference to the fact that the insurance policies being issued by Green Mountain were State National policies, yet Green Mountain has put forth sufficient evidence to support its argument that "the Reliant Companies represented to Green Mountain that they (Reliant Companies) were underwriting – and thus bore the economic risk – associated with the policies issued pursuant to the Green Mountain – Reliant Agreement."[31] (Gr. Mtn Mem. in Opp. at 13-14).

Accordingly, the parties' cross motions for summary judgment on State National's tort claim against Green Mountain are denied.

---

[31]The Court notes that New Jersey has enacted extensive regulations governing insurance companies doing business within its borders. See, e.g., Carter Lincoln-Mercury, Inc., Leasing Div. v. EMAR Group, Inc., 135 N.J. at 204, 638 A.2d at 1299. These regulations include strict licensing and capital reserve requirements. See, e.g., N.J. Rev. Stat. §§ 17:17-12, 17:22-6.37-45. Since neither Reliant nor Reliant General appear to have been licensed to sell insurance in New Jersey, instead relying on a so-called fronting arrangement with State National, New Jersey's insurance regulations, especially those pertaining to licensing, raise a serious question about whether Green Mountain could have reasonably thought that Reliant or Reliant General were underwriting the Pro Transport Policy. See, e.g., N.J. Rev. Stat. 17:17-12 (prohibiting unauthorized carriers from conducting insurance business in the state).

<u>CONCLUSION</u>

For the reasons stated above, the Court Orders as follows:  1) with regard to State National's contract claim against Green Mountain, Green Mountain's motion for summary judgment is granted, and State National's motion for summary judgment is denied; and 2) with regard to State National's negligence claim against Green Mountain, the parties' cross motions for summary judgment are denied.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
           August 2, 2010

_____/s/_____
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York