UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ROBERT LUIZZI and JOSEPHINE LUIZZI,

                  Plaintiffs,

          - against -

PRO TRANSPORT, INC. and LUIS SANCHEZ,

                  Defendants,
-----------------------------------------------------------------X
LUIS SANCHEZ,

                  Defendant/Third Party Plaintiff,

          - against -

STATE NATIONAL INSURANCE COMPANY,

                  Third Party Defendant,
-----------------------------------------------------------------X
STATE NATIONAL INSURANCE COMPANY,

                  Second Third Party Plaintiff,

          - against -

GREEN MOUNTAIN AGENCY, INC.,

                  Second Third Party Defendant.
-----------------------------------------------------------------X

**MEMORANDUM &
O R D E R**

02 CV 5388 (CLP)

       This personal injury action was commenced on September 25, 2002, in New York Supreme Court, Kings County, by plaintiffs Robert and Josephine Luizzi, based on injuries suffered by Robert Luizzi during a traffic accident that occurred on September 22, 2001, between the car driven by Mr. Luizzi and a tractor trailer owned by Pro Transport, Inc. ("Pro Transport") and driven by Luis Sanchez ("Sanchez"). By Notice of Removal, dated October 4, 2002, defendants removed the

action to this Court. On October 18, 2002, Sanchez served his Answer to plaintiff's Complaint and on December 22, 2004, defendant Pro Transport served its Answer to the Complaint with a Cross-Claim against Sanchez. On June 3, 2005, defendant Sanchez served a Third-Party Complaint against State National Insurance Company ("State National"),[1] alleging that State National was responsible for any liability and insurance coverage for Sanchez and Pro Transport arising out of the underlying vehicle accident. On July 29, 2005, State National served its Answer to the Third-Party Complaint, denying the existence of the insurance policy in question.

On February 9, 2006, State National filed a Second Third Party Complaint against its insurance wholesaler, Green Mountain Agency, Inc. ("Green Mountain"), claiming breach of contract and negligence in failing to properly cancel the aforementioned policy. A framed issue hearing was held before the Court on January 17, 18, and 22, 2007, to determine whether the insurance policy that had been issued by State National to defendant Pro Transport (the "Pro Transport Policy") had been effectively cancelled prior to the date of the accident at issue. Based on the evidence presented during the hearing, the Court issued a Memorandum and Order, dated February 25, 2008, determining that, due to an error made by Green Mountain, the policy had not been effectively cancelled in accordance with New Jersey law and had therefore been in effect on the day of the accident. (See 2/25/08 Order[2] at 2). The Court, however, made no finding on the other defenses raised by Green Mountain.

On April 3, 2010, both Green Mountain and State National cross-moved for summary

---

[1] One Beacon Insurance Company ("One Beacon") was also named as a third-party defendant, but on February 8, 2006, One Beacon was dismissed from the action.

[2] Citations to "2/25/08 Order" refer to the Memorandum and Order issued by this Court, dated February 25, 2008.

judgment on both of the claims in the Third Party Complaint. By Memorandum & Order, dated August 2, 2010, this Court granted Green Mountain's motion for summary judgment on State National's breach of contract claim, finding that there was no genuine issue of material fact in dispute as to that claim because there was no mention of State National in the Green Mountain Agreement, much less any expressed intent to make State National a third-party beneficiary of the agreement. (8/2/10 Order[3] at 18). With regard to State National's negligence claim, this Court held that "genuine issues of material fact remain outstanding." (8/2/10 Order at 26-34).

Now before this Court is a motion by State National to preclude Green Mountain's proposed insurance expert witness, M. Thomas Ruke, Jr. ("Ruke"), from offering certain opinions at trial.

## DISCUSSION

At a conference held before this Court on January 21, 2011, the parties discussed Mr. Ruke's expert report submitted by Green Mountain. State National objected to the admissibility of Mr. Ruke's expert opinions, and the Court thereafter set a briefing schedule on this issue.[4]

Green Mountain proposes to offer Mr. Ruke's testimony on four topics. State National is

---

[3]Citations to "8/2/10 Order" refer to the Memorandum and Order issued by this Court, dated August 2, 2010.

[4]State National filed its Brief to Exclude Green Mountain Expert Witness on February 11, 2011 ("Brief to Exclude"). On March 15, 2011, Green Mountain submitted a Memorandum in Opposition to State National's Motion to Exclude Expert Report and Testimony of M. Thomas Ruke ("Green Mountain Opp."), and on March 21, 2011, State National submitted a Reply Affirmation of Thomas G. Darmody, Esq., counsel for State National ("Reply Aff."). On March 29, 2011, Green Mountain submitted a letter requesting leave to file a Sur-Reply to address the contention made in State National's Reply Affirmation that Rule 411 of the Federal Rules of Evidence bars testimony regarding insurance issues (see Reply Aff. ¶¶ 9-10), which the Court granted. Green Mountain's Sur-Reply was filed on April 4, 2011 ("Sur-Reply").

currently challenging three of Ruke's opinions – namely, that: 1) Green Mountain had no responsibility to cancel the State National Policy in question; 2) it was not reasonably foreseeable that State National would incur any economic loss as a result of Green Mountain's actions (or inactions); and 3) it was not fair under the circumstances for Green Mountain to be responsible for any amounts State National paid under the policy in question. (Brief to Exclude ¶ 12).

After considering the parties' various submissions, as well as the arguments made during the January 21, 2011 conference, the Court limits Mr. Ruke's testimony to an explanation of fronting agreements and any custom and practice in the insurance industry relating to such fronting arrangements.

1) <u>Green Mountain's Responsibility to Cancel the Insurance Policy</u>

Turning first to Mr. Ruke's proposed testimony that in his opinion, Green Mountain had no responsibility to cancel the State National insurance policy, State National objects to this testimony on a number of grounds. First, State National argues that during the framed issue hearing, "this Court has all but ruled that it was, in fact, Green Mountain's responsibility to issue the cancellation." (<u>Id.</u> ¶ 15). Specifically, this Court found that, despite Green Mountain's prior assertions that it had properly cancelled the insurance policy in question, Green Mountain had "not satisfied its burden of establishing that the Notice" of Cancellation was properly mailed to Pro Transport and therefore "the insurance policy issued by State National Insurance Company to Pro Transport was not properly cancelled by Green Mountain Agency." (2/25/08 Order at 30, 35). Thus, State National contends that this issue has already been decided and there is no need for Mr. Ruke's expert testimony.

Moreover, as State National notes in its Reply Affirmation, the scope of the contract's terms and the obligations of Green Mountain under the contract are no longer relevant to the claims remaining in this case because the Court dismissed State National's breach of contract claim. (See Reply Aff. ¶¶ 12-14 (asserting that "[a]ny relevance of these arguments was eliminated when the Court dismissed State National's breach of contract claim")). Despite Green Mountain's claims, all that remains at issue here is whether Green Mountain, having chosen to act to cancel the insurance policy, acted negligently in taking steps to cancel the policy. The issue is not whether Green Mountain had an obligation or duty to do so in the first place.[5]

However, State National argues that even if Green Mountain is permitted to pursue this argument, "it is not proper for this argument to be presented by an expert witness," as an expert witness is "not permitted to give an opinion as to the legal obligations of the parties under a contract." (Brief to Exclude ¶ 16 (citing Marx & Co., Inc. v. The Diner's Club, Inc., 550 F.2d 505, 508 (2d Cir. 1997))). The Court agrees. "This circuit is in accord with other circuits in requiring exclusion of expert testimony that expresses a legal conclusion." (Brief to Exclude ¶ 22 (quoting Hygh v. Jacobs 961 F.2d 359, 363 (2d Cir. 1992))).

More specifically, it is for the Court, not the jury, to determine a party's obligations under a contract, and thus expert testimony to that effect is inappropriate. See, e.g., Morse/Diesel, Inc. v.

---

[5]State National also argues that it is inappropriate for Mr. Ruke to testify as to the issue of Green Mountain's responsibility because it is a "lay matter[] which a jury is capable of understanding without the expert's help." (Brief to Exclude ¶ 18 (citing Highland Capital Management, L.P. v. Schneider, 379 F. Supp. 2d 461 (S.D.N.Y. 2005)); see also Reply Aff. ¶ 5). Since the Court has found that this testimony is inappropriate for other reasons, the Court has not addressed this claim or Green Mountain's response that "[t]he standard of conduct of a wholesale insurance broker acting pursuant to its contractual obligations is not a matter within common knowledge of the ordinary lay person" and that Mr. Ruke should therefore be able to testify to that issue. (Green Mountain Opp. at 3, 14-15).

Trinity Indus., Inc., 67 F.3d 435, 439 (2d Cir. 1995) (citing Harris Trust and Savings Bank v. John Hancock Mut. Life Ins. Co., 970 F.2d 1138, 1147-48 (2d Cir. 1992) (noting that "[t]he proper interpretation of the contract is a question of law for the court"), aff'd 510 U.S. 86 (1993)); Cruden v. Bank of New York, 957 F.2d 961, 976 (2d Cir. 1992) ("Construing an unambiguous contract provision is a function of the court, rather than a jury . . ."); Carvalho v. Toll Bros. & Developers, 675 A.2d 209, 212, 143 N.J. 565, 572 (1996) (quoting Wang v. Allstate Ins. Co., 592 A.2d 527, 534, 125 N.J. 2, 15 (1991)).

Even Green Mountain recognizes that "the Court in its August 2, 2010 Order was absolutely clear" in stating that "the issue of whether Green Mountain owed a duty to State National is a legal issue for the Court to determine." (Green Mountain Opp. at 10). However, Green Mountain asserts that Mr Ruke is not expressing any "legal conclusion," nor is he attempting to construe the contract or express an opinion as to the legal obligations of Green Mountain under the contract. (Id. at 14). Instead, Green Mountain asserts that Mr. Ruke will be offering testimony "regarding Green Mountain's obligation to cancel the Pro Transport Policy . . . based upon industry custom and practice in light of Section IV (a)(2) of its agreement." (Id.) Specfically, he will testify "that it is understood in the insurance industry that the duties of a wholesale broker are only as extensive as specifically set forth in the pertinent agreement(s)." (Id.) Regardless of how Green Mountain attempts to cloak the testimony as being about industry customs, Mr. Ruke's testimony that Green Mountain was not responsible for cancelling the policy is still an opinion as to the scope of the obligations created by the contract, which is not a proper subject matter for an expert opinion.

Therefore, Mr. Ruke will not be permitted to testify regarding Green Mountain's obligation, or lack thereof, to cancel the insurance policy.

2) <u>Foreseeability and Fairness</u>

Green Mountain also attempts to defend the aforementioned proposed testimony of Mr. Ruke as to the scope of Green Mountain's obligations under the contract by asserting that the testimony goes to the remaining "factual determinations associated with forseeability of loss to State National and fairness." (Green Mountain Opp. at 10). Green Mountain asserts that Mr. Ruke should be permitted to testify about "fronting custom and practice in the insurance industry, including, but not limited to, the use of hold-harmless, indemnity and reinsurance provisions[6] to insulate the fronting party from economic risk in relation to the facts of the instant case" in order to assist the jury in "understand[ing] fronting terms and concepts and properly resolv[ing] the referenced forseeability and fairness issues." (<u>Id.</u> at 10-11). Green Mountain admits, however, that Mr. Ruke's report expresses his "<u>opinions</u> regarding forseeability, fairness and that Green Mountain's conduct and understandings comported with that custom and practice." (<u>Id.</u> at 11 (emphasis added)). Forseeability and fairness are issues that clearly require application of the law to the specific facts of this case and they are issues for the trier of fact to determine.

Green Mountain asserts that, under Rule of Evidence 704, Mr. Ruke's opinions and inferences should not be excluded, even if they go to an ultimate issue that is for the jury to determine. (<u>See</u> Green Mountain Opp. at 13 (citing <u>inter alia</u> Fed. R. Evid. 704; <u>Cary Oil Co., Inc. v. MG Ref. & Mktg. Inc.</u>, No. 99 CV 1725, 2003 WL 1878246, at *5 (S.D.N.Y. Apr. 11, 2003))). Although prior to the amendment to Rule 704 in 1984, the general rule was that experts would not

---

[6]As discussed, <u>infra</u> at 10, 13-14, Mr. Ruke will only be permitted to testify as to what fronting agreements involve and the customs and practices in the industry regarding the use of fronting agreements, but he will not be permitted to discuss or opine on the potential protection afforded to State National due to any hold-harmless provision, reinsurance, or indemnity agreement.

7

be permitted to render an opinion as to an ultimate issue in a case, the amendment to Rule 704 was designed to provide "trial courts with more latitude to allow experts to testify about issues that would help the jury understand concepts it needed know to render a verdict despite the fact that the opinions may encroach on matters of law." (Green Mountain Opp. at 13). Thus, the central issue is whether, in this case, the jury actually requires expert assistance.

Green Mountain contends that Mr. Ruke's testimony regarding fronting agreements and foreseeability should be permitted because this information "is outside the experience of typical lay persons, [and] courts permit expert testimony in the context of fronting arrangements between insurers." (Id. at 11 (citing Reliance Ins. Co. v. Certain Member Cos., 886 F. Supp. 1147 (S.D.N.Y. 1995); Playtex FP, Inc. v. Columbia Casualty Co., 609 A.2d 1087 (Del. Sup. Ct. 1991); Coppage v. Resolute Ins. Co., 264 Md. 261 (1972))).[7] Green Mountain argues that "[t]he lay person will have no knowledge about fronting agreements or the custom and practice as to those agreements in the insurance industry, or the economic relationships attached thereto." (Green Mountain Opp. at 2 (emphasis in original)).

State National, however, argues that the customs and practices of the insurance industry are not relevant in determining foreseeability here because that decision "will not depend upon what usually occurs in the insurance industry, but what Green Mountain understood the agreement between the parties to be." (Reply Aff. ¶ 6). State Mountain therefore asserts that it is unnecessary for an expert to explain these issues "unless Green Mountain's counsel can first demonstrate that the actual witnesses involved in the transactions cannot explain it to the jury through testimony and

---

[7]The Court notes that none of these cases involve testimony regarding foreseeability.

documents." (Id. ¶ 7).[8] Furthermore, as State National notes, experts are not permitted to testify regarding "what people involved in the transaction knew, believed, assumed or understood." (Id. ¶ 26 (citing Kidder, Peabody & Co., Inc. v. IAG Int'l Acceptable Group, 14 F. Supp. 2d 391, 397 (S.D.N.Y. 1998))). It is for this reason that expert testimony regarding the foreseeability of harm has been held to be inadmissible. See, e.g., Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) (holding that "[i]t is well settled that expert testimony is unnecessary in cases where jurors are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training"); see also Szaroleta v. Metro-North Commuter R.R., No. 07 CV 7639, 2008 WL 4681983, at *6 (S.D.N.Y. Oct. 20, 2008). State National argues that since expert testimony on the question of forseeability is not necessary to assist the fact-finders in reaching their conclusion, it is inadmissible under Rule 702 of the Federal Rules of Evidence.[9] (Brief to Exclude ¶¶ 28-29 (citing Ebbert v. Nassau County, No. 05 CV 5445, Sept. 26, 2008 WL 4443238 (E.D.N.Y. 2008); Marx & Co., Inc. v. Diners Club, Inc., 550 F.2d at 509)).

---

[8]The Second Circuit has defined forseeability as follows: "Reasonably foreseeable pecuniary harm is defined as 'pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense.'" United States v. Turk. 626 F.3d 743, 750 (2d Cir. 2010) (emphasis added). Clearly, a question of foreseeability requires an analysis of what the people involved "knew, believed, assumed, or understood," or what they should have reasonably known, "believed, assumed, or understood."

[9]Rule 702 provides as follows:
> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702 (emphasis added).

The Court agrees with State National that "[w]hat Mr. Ruke believes to be foreseeable and fair in this action is completely irrelevant." (Brief to Exclude ¶ 8). Indeed, given that Green Mountain claims that Mr. Ruke will not "testify as to what people involved in the transaction at issue 'knew, believed, assumed or understood'" (Green Mountain Opp. at 11), it is unclear how Mr Ruke intends to testify regarding foreseeability. However, although the Court finds that fronting practices are not directly at issue here, testimony explaining how the insurance industry works will most likely help the jury understand the relevant issues in this case, such as foreseeability. As it is likely that a lay juror would have little understanding of fronting agreements, the Court agrees that Mr. Ruke's testimony will assist them in understanding the terms and concepts involved, so that they can reach informed conclusions on their own. (Id. at 10-11). Therefore, Mr. Ruke will be permitted to testify in order to explain to the jury what fronting agreements involve and the customs and practices in the insurance industry in using fronting agreements.

While the Court will permit Mr. Ruke to explain to the jury certain industry customs and practices, the Court finds that it would be inappropriate to allow Mr. Ruke to testify about whether <u>he believes</u> Green Mountain's practice <u>comported</u> with those customs. His opinion as to how these customs and practices apply to the particular facts of this case is the type of testimony that attempts to interpret the facts and takes the decision out of the hands of the jury. (See Brief to Exclude ¶ 23 (citing Pension Committee of the Univ. of Montreal Pension Plan v. Banc of Am. Sec., L.L.C., 691 F. Supp. 2d 448, 458 (S.D.N.Y. 2010)) (holding that "expert witnesses are generally not permitted to address issues of fact that a jury is capable of understanding without the aid of expert testimony")). As State National notes: "[e]xperts should not be permitted to supplant the role of counsel in making argument[s] at trial and the role of the jury in interpreting the evidence." (Brief to Exclude ¶ 27).

Since the jury will likely be able to come to their own conclusions about foreseeability after they are given all of the relevant facts, the Court will not permit expert testimony regarding forseeability. Moreover, the Court finds that any suggested testimony by Mr. Ruke that it would be "unfair" to hold Green Mountain accountable because Green Mountain could not have foreseen the loss to State National is unnecessary and within the general knowledge of the jury. As Green Mountain recognizes, while "expert testimony may help a jury understand unfamiliar terms and concepts[,] [i]ts use may be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge in instructing the jury as to the applicable law or the role of the jury in applying that law to the facts before it." (Green Mountain Opp. at 12 (quoting United States v. Belzevian, 926 F.2d 1285, 1294 (2d Cir. 1991))).

Accordingly, although the Court will permit Mr. Ruke to testify regarding industry customs and practices to some degree, the Court finds Mr. Ruke's proposed testimony applying those concepts to the facts here and rendering an opinion about foreseeability or fairness to be inadmissible.

3) Insurance Coverage

State National also challenges Mr. Ruke's testimony regarding economic risk, hold-harmless agreements, indemnity agreements, and insurance coverage as forbidden by Federal Rule of Evidence 411.[10] (Reply Aff. ¶¶ 9-10). In its Sur-Reply, Green Mountain argues that this testimony

---

[10]Rule 411 reads in full as follows:
> Evidence that a person was or was not insured against liability is not admissible upon the issue whether the person acted negligently or otherwise wrongfully. This rule does not require the exclusion of evidence of insurance against liability when offered for another purpose, such as proof of agency, ownership, or control, or bias or

11

is relevant to the issue of foreseeability. (Sur-Reply at 2-3). However, as noted above, the expert will not be permitted to testify about forseeability. Green Mountain also argues that Rule 411 only precludes evidence regarding the insurance coverage, or lack thereof, of the party being charged with negligence, or in order to establish wrongdoing. (Id. at 6). Green Mountain therefore asserts that since State National is not being charged with wrongdoing, the expert's testimony should be permitted because it is "being offered to explain risk transfer from State National to Reliant on policies issued pursuant to the State National - Reliant fronting agreement and the reasonableness of Green Mountain's understanding that State National would not sustain economic loss if the Pro Transport Policy was not effectively cancelled." (Id.)

State National, on the other hand, argues that "[a]ny suggestion to the jury that State National was protected from economic harm due to the presence of reinsurance, indemnity agreements or hold-harmless clauses is absolutely inadmissible and any suggestion by Green Mountain's counsel to the contrary ignores one of the most basic tenets of State and Federal Rules of Evidence." (Reply Aff. ¶ 10). As State National notes, "[u]nder the general rule, the fact that a [party] is protected by insurance or other indemnity cannot be shown." (Id. ¶ 9 (citing Halladay v. Verschoor, 381 F.2d 100, 112 (8th Cir. 1967) (holding that "[u]nless the fact that the plaintiff is insured or otherwise indemnified is a material issue in the case, or unless the prejudicial effect has been cured by an admonition or instruction to the jury to disregard it, it has been almost universally held that the receipt of such evidence constitutes prejudicial error sufficient to require reversal"))); see also Larez v. Holcomb, 16 F.3d 1513, 1519 (9th Cir. 1994).    This Court finds that the language of Rule 411 and supporting case law clearly prohibits Mr. Ruke's proposed testimony

---

                    prejudice of a witness.
Fed. R. Evid. 411.

regarding insurance coverage, which is intended to prove that because Green Mountain believed that State National was covered by Reliant's reinsurance policy, Green Mountain did not foresee any economic loss to State National as a result of Green Mountain's negligence. Green Mountain does not deny that Mr. Ruke's testimony is intended to convince the jury that Green Mountain should not be held accountable for its negligent conduct because it knew that State Mountain was otherwise insured and would be reimbursed for its losses. Green Mountain seeks to have Mr. Ruke testify that it was reasonable for Green Mountain to understand "that State National would not sustain economic loss if the Pro Transport Policy was not effectively cancelled" because State National was covered by reinsurance. (Sur-Reply at 6). Essentially, Green Mountain is asserting that its wrongful conduct should be excused because State National was covered by reinsurance and would therefore not have been monetarily harmed by Green Mountain's negligence.

However, this argument ignores the fact that, as with all insurance arrangements, someone bears the cost of negligence even if it is only the insurance company. Thus, even if Green Mountain reasonably believed that State National would not suffer economically as a result of Green Mountain's negligence, Green Mountain nonetheless must concede that it knew that someone – in this case, Reliant – would be liable for covering any losses experienced as a result of Green Mountain's negligence. If it were not for the fact that Reliant is now in bankruptcy, Green Mountain might very well be facing negligence claims brought by Reliant for the harm caused as a result of Green Mountain's failure to properly cancel the policy. If this defense to liability were accepted, then no defendant would ever be found liable for a wrong done to a plaintiff whose injuries were covered by insurance. Thus, this argument is not persuasive.

Moreover, to admit information regarding the potential protection afforded State National as a result of the existence of reinsurance, indemnity agreements, and hold-harmless provisions runs

13

the risk that the jury may consider this evidence for an improper reason. Given that the evidence is being offered for reasons explicitly prohibited by Rule 411, the Court holds that Mr. Ruke will not be permitted to testify regarding these issues.

## CONCLUSION

In conclusion, Green Mountain's expert, Mr. Ruke, will be not be permitted to testify regarding: 1) the scope of or contractual obligations of Green Mountain under the contract or express his opinion as to whether Green Mountain had a responsibility to cancel the Pro Transport Policy; 2) what was foreseeable to the parties or his opinion as to whether it would be "fair" to hold Green Mountain liable; or 3) what indemnification or reinsurance was available to State National. Mr. Ruke's testimony will be limited to an explanation of what fronting agreements entail and the custom and practice in the insurance industry relating to fronting agreements, subject to the limits stated herein.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
May 2, 2011

/s/ Cheryl Pollak
Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York

14